**In re Sharwline NICHOLSON, et al.**

No. CV 00–2229, CV 00–
5155, CV 00–6885.

United States District Court,
E.D. New York.

Jan. 3, 2002.

Lansner & Kubitschek, New York, By David Lansner, Carolyn Kubitschek, Sanctuary for Families, Battered Women's Legal Services, New York, By Jill Zuccardy, for Plaintiffs Subclass A.

Legal Aid Juvenile Rights Division, Juvenile Rights Division, By Monica Drinane, Leslie Abbey, Barrie Goldstein, Kay G. McNally, Judith Waksberg, Henry Weintraub, Lawyers for Children, New York, By Karen Freedman, Karen Walker Bryce, Betsy Kramer, for Plaintiffs Subclass B.

Martha Olson, Citizens' Committee for Children, Riverdale, Next Friend of Children in Subclass B.

New York City Law Department, Office of the Corporation Counsel, Brooklyn, NY, By Michael D. Hess, Jonathan Pines, Martha Calhoun, Carolyn Wolpert, Daniel A. Shacknai, Administration for Children's Services Deputy General Counsel, New

York, for City of New York and Administration for Children's Services.

NYS Attorney General, New York, By William H. Bristow III, Robert Kraft, for State of New York and Governor George E. Pataki.

Mintz, Levin, Cohn, Ferris, Glovsky & Popeo, P.C., Washington, D.C., By Greg E. Haber, Fernando R. Laguarda, Noam B. Fischman, for Amici National Network to End Domestic Violence and National Network to End Domestic Violence Fund.

Law Offices of Joanne C. Fray, Lexington, MA, By Joanne C. Fray, Helene Sullas Huggins, for Amicus National Coalition for Child Protection Reform.

Missouri Coalition Against Domestic Violence, Jefferson City, MO, By Nina Balsam, for Amicus Missouri Coalition Against Domestic Violence Against Women.

Davis, Polk & Wardwell, New York, By Frank S. Moseley, Zachary S. McGee, Joan Loughane, Kelli J. Stenstrom, Of Counsel, New York County Lawyer's Association, New York, By Craig A. Landy, Norman L. Reimer, for Amicus New York County Lawyers' Association.

Ohio Domestic Violence Network, Columbus, OH, By Alexandria M. Ruden, for Amicus Ohio Domestic Violence Network.

## AMENDED MEMORANDUM, ORDER AND PRELIMINARY INJUNCTION

WEINSTEIN, Senior District Judge.

This is a class action brought primarily on behalf of women who are battered and who, without fault on their part, have their children removed by the Administration for Children's Services (ACS), and on behalf of children so removed. *See Nicholson v. Williams*, 202 F.R.D. 377 (E.D.N.Y. 2001) (memorandum and order certifying class action and dividing class into a subclass A for mothers and a subclass B for children).

The federal court intercedes with regret. It recognizes the enormous strides the State and City of New York have made in ameliorating and addressing problems of domestic violence. *See, e.g.,* N.Y.L.J., Nov. 27, 2001 at 1 (reporting the opening of the Bronx Integrated Domestic Violence Court, which incorporates the "One Family/One Judge" concept initiated by Chief Judge Judith S. Kaye, where a single judge addresses the multiple legal issues—criminal, family, and matrimonial—that can arise when domestic violence occurs). Yet, serious constitutional defects still exist in this evolving system, leaving no legal alternative of abstention under Article III and the Fourteenth Amendment of the United States Constitution.

Plaintiffs have moved for a preliminary injunction. Extensive evidentiary hearings have been completed on the question of whether a preliminary injunction should be granted and, if so, its form.

Because of the serious and imminent danger to plaintiffs caused by defendants' continuing constitutional violations, a preliminary injunction is now issued. An extensive explanatory memorandum will be issued as soon as other work permits.

Two subclasses have been certified. Subclass A consists of:

All persons subject to domestic violence or its threat who are custodians of children, legally or de facto, if:

1. the children reside or resided in a home where battering was said to have occurred, but where the children themselves have not been physically harmed by the non-battering custodian or threatened with harm by the non-battering custodian, or neglected by the non-batter-

ing custodian, and where protection of the children and their best interests can be accomplished by separation of the alleged batterer from the custodian and children or by other appropriate measures without removal of the children from the non-battering custodian; and if,

2. the children are sought to be removed or were removed by the New York City Administration for Children's Services (ACS) or other governmental agency without court order (even if removal is ultimately approved by a court), wholly or in part because the children reside in a home where battering of the custodian was said to have occurred; or

3. the custodian is named as a respondent by ACS in child protective proceedings by ACS under Article 10 of the New York Family Court Act in which removal may be sought (even if removal is ultimately approved by a court), wholly or in part because the children reside in a home where battering of the custodian was said to have occurred; or

4. the custodian is denied adequate counsel:

a) in proceedings required by law before ACS which may confirm or lead to removal of a child or failure to promptly return a removed child; or

b) in court proceedings where ACS is a party, which may confirm or lead to removal of a child or failure to promptly return a removed child.

The definition of subclass A has been slightly altered since it was first certified, with no substantial effect.

Subclass B consists of:

All children who are or were in the custody of a custodian in subclass A:

1. who have been or are likely to be removed by ACS or other governmental agency since December 16, 2000; or

2. who were removed prior to December 16, 2000 and continue to be in removed status after December 16, 2000; or

3. who have not been returned to the custodian as soon as possible after December 16, 2000 pursuant to a court order, where:

a) ACS has no discretion to delay the child's return; or

b) ACS has discretion to delay or condition the child's return, but delay or conditions are not necessary for the protection of the child.

The provisions of this preliminary injunction are designed to protect these subclasses against the unconstitutional conditions and acts they are subject to. Subclass B makes no claim against the State; subclass A will obtain all the protection it seeks without any preliminary order directed against the State. The fact that a child is not within subclass B does not deprive the custodian of her rights as a member of subclass A. Although subclass A may include males, most members are female. The definition of subclass B is designed to take into account the order of *Marisol A. v. Giuliani,* 185 F.R.D. 152 (S.D.N.Y.1999) (approving settlement).

ACS has systematically and repeatedly removed children of battered mothers for the reason that mothers "engaged in" domestic violence by being victims of such violence. Following removal, mothers have had to overcome delays, difficulties in obtaining effective counsel, and a lack of assistance from ACS, the police, or other organizations in obtaining effective protection against the batterers before the children were returned to the mother. In

many cases the mother has been extremely vulnerable, lacking independent economic resources, social and psychological support systems, or the capacity to utilize administrative and judicial systems effectively for self-protection of her rights and those of her children. In some cases, even after the children are returned, ACS pursues neglect actions against the mothers in Family Court solely on the ground that they were victims of domestic violence.

■  Practices and policies of ACS violate the constitutional rights of both mothers and children. Parents have a well-recognized interest in the "care, custody, and control of their children [that] is perhaps the oldest of fundamental liberty interests...." *Troxel v. Granville*, 530 U.S. 57, 62, 120 S.Ct. 2054, 147 L.Ed.2d 49 (2000). The interest of children in preserving family integrity is also constitutionally protected. *See, e.g., Duchesne v. Sugarman*, 566 F.2d 817, 825 (2d Cir. 1977). Substantively, parents and children have a constitutional right not to be separated by the government unless the parent is unfit to care for the child. *See, e.g., Quilloin v. Walcott*, 434 U.S. 246, 255, 98 S.Ct. 549, 54 L.Ed.2d 511 (1978) ("We have little doubt that the Due Process Clause would be offended '[if] a State were to attempt to force the breakup of a natural family, over the objections of the parents and their children, without some showing of unfitness and for the sole reason that to do so was thought to be in the children's best interest.' ") (quoting *Smith v. Organization of Foster Families*, 431 U.S. 816, 862–63, 97 S.Ct. 2094, 53 L.Ed.2d 14 (1977) (Stewart, J., concurring in judgment)); *Nicholson v. Williams*, 202 F.R.D. 377 (E.D.N.Y.2001). Procedurally, parents and children have a constitutional right to due process of law before they are separated. *See, e.g., Tenenbaum v. Williams*, 193 F.3d 581, 596 (2d Cir.1999) ("[I]t is uncon-

stitutional for state officials to effect a child's removal on an "emergency" basis where there is reasonable time safely to obtain judicial authorization consistent with the child's safety."). The evidence to date overwhelmingly demonstrates that the defendants have violated these constitutional rights.

■  Exigencies of the case require a preliminary injunction. Children and parent-child relationships are particularly vulnerable to delays in repairing custodial rifts; even relatively short separations may hinder parent-child bonding, interfere with a child's ability to relate well to others, and deprive the child of the essential loving affection critical to emotional maturity. A preliminary injunction is granted for the purpose of ensuring that 1) battered mothers who are fit to retain custody of their children do not face prosecution or removal of their children solely because the mothers are battered and 2) the child's right to live with such a mother is protected.

For the purposes of this preliminary injunction, the court finds that 1) there is a clear and substantial likelihood that plaintiffs will succeed on the merits, *see, e.g., Zonell v. Giuliani*, 230 F.3d 543 (2d Cir. 2000), and 2) plaintiffs will suffer irreparable harm if relief is not now granted. *See, e.g., Otokoyama Co. v. Wine Import of Japan, Inc.*, 175 F.3d 266, 270 (2d Cir. 1999). These findings of fact and law in this memorandum and order are based upon the evidence and are made in accordance with Rule 52(a) of the Federal Rules of Civil Procedure.

After this suit was commenced, and in large measure as a result of the litigation, ACS began to attempt remediation of the grave deprivations and threats of deprivations of plaintiffs' constitutional rights. These initial moves by ACS, while praiseworthy, have not yet cured the constitu-

tional violations. In a discussion with the Commissioner of ACS while he was on the witness stand, the court agreed that it would be appropriate to provide defendants with a six month stay. This delay will give ACS the opportunity to implement further changes that secure and protect plaintiffs' constitutional rights without unnecessary interference by the court.

Granting a stay is not antithetic to the need for prompt action. It permits time for an expedited appeal, avoiding the need for changes in procedures that may need further revision should the court of appeals have a view different from that of the trial court. Most importantly, the court assumes the bona fides of ACS's leadership in seeking promptly to eliminate its unconstitutional practices and policies.

There are six issues that must be addressed in this preliminary injunction: first, what ACS should do when reporting the results of investigations of child abuse or neglect to the New York State Central Register of Child Abuse and Maltreatment, see preliminary injunction, infra at ¶ 2; second, what ACS should do prior to removing a child, see id. at ¶¶ 3, 4, 5; third, what ACS should do when it drafts and files a petition against a mother under Article Ten of the New York Family Court Act, see id. at ¶ 6; fourth, what ACS should do after a removal has occurred, see id. at ¶¶ 3, 5, 7, 8; fifth, what ACS should do in connection with prior petitions that have resulted in injustice, see id. at ¶ 9; and sixth, what should be required of ACS in terms of training and administration, see id. at ¶¶ 10, 11, 12.

A distinction is drawn in the preliminary injunction between petitions already filed and those which will be filed. Where the petition has already been filed, since an order may have been issued by a state court, precatory language is used to induce ACS to attempt to rectify continuing injustices. Out of concern for comity with the state judicial system, the provisions of the preliminary injunction are not mandatory for pending or resolved petitions, as they are with respect to future petitions. Compare ¶ 9 (pending and resolved petitions) with ¶ 6 (future petitions).

The court recognizes that the State of New York, its courts, its administrative agencies and its municipal governments have the primary responsibility for protecting mothers and children. The state has largely delegated these duties to municipalities. No part of the court's preliminary injunction is designed to interfere in the slightest with the jurisdiction of New York's Family Court or of any other court of New York. Comity with all state institutions is preserved.

Nevertheless, serious inadequacies in providing counsel for the mothers must be addressed. Compensation for attorneys appointed to represent mothers threatened with separation from their children do not even cover office overhead of well-prepared attorneys. The differential between compensating for in-court and out-of-court work results in lack of adequate investigation, preparation, effective advice to the client and adequate representation in court. The result of these inadequacies in providing even minimally adequate counsel for mothers is that members of subclass A are consistently deprived of their constitutional procedural rights of due process and their constitutional substantive rights to be joined as a family with their children.

The provisions of this preliminary injunction requiring increased compensation for attorneys appointed pursuant to Article 18–B of the New York County Law representing members of subclass A are vital for two reasons: first, the defendants' practice of providing indigent mothers with representation at inadequate compen-

sation levels currently required by Article 18–B violates the constitutional rights of subclass A plaintiffs, and second, adequate representation of subclass A mothers is necessary in order to ensure that the provisions of this preliminary injunction designed to protect these constitutional rights are effectuated. No other decision is possible in light of the overwhelming consensus of state officials, judicial officers, legal experts, and court opinions, as well as the evidence, that the current statutory rates do not permit 18–B lawyers to provide competent representation to their clients, and that as a result mothers are consistently denied their constitutional rights. *See, e.g., Matter of Wager,* N.Y.L.J., Feb. 8, 2001, at 32 (Dutchess County Fam. Ct.) (ruling that the judge would compensate all future assigned counsel appearing in his courtroom at $75 per hour); *Matter of Joshua AA,* 187 Misc.2d 216, 722 N.Y.S.2d 361 (Clinton County Fam. Ct.2001) (same); *see also, e.g.,* Officials Plead for 18–B Fee Hike, N.Y.L.J., Nov. 30, 2001, at 1 ("Addressing what was described as a 'catastrophic problem in our courts,' a group of state court judges and district attorneys [urged] Governor Pataki and the Legislature to increase fees for lawyers who represent indigent defendants."); Hon. Jonathan Lippman & Hon. Juanita Bing Newton, Assigned Counsel Compensation in New York: A Growing Crisis 26 (2000) (official report of the Chief Administrative Judge of the Courts and the Deputy Chief Administrative Judge for Justice Initiatives concluding that "If New York is to continue to meet its *constitutional* and statutory obligations to provide assigned counsel to indigent litigants in the Criminal Courts and Family Court, it is *imperative* that the hourly compensation for this work be increased.") (emphasis added).

The compensation ceiling on 18–B fees in any one case set by the preliminary injunction is too low, but, as with the present statutory cap, it may be lifted by a state court in individual cases. The court assumes that New York courts will continue their practice of granting compensation in excess of the cap when necessary to ensure adequate representation.

It may well be that the most effective way to ensure adequate representation for members of subclass A would be to create an institution modeled along the lines of the Legal Aid Society. Such an organization would have attached to it the paraprofessionals, office workers, investigators, and experts who provide stability and institutional know-how, as well as the supervision to ensure that minimum constitutional standards are met. A radical restructuring of this nature is beyond the appropriate exercise of power by this court. The court notes, however, that it is the availability of such an organization administering most of the Criminal Justice Act, section 3006–A of Title 18 of the United States Code (C.J.A.), representation in the Federal District Courts for the Eastern and Southern Districts of New York that has minimized the crisis provoked by the inadequacy of the $75 per hour compensation rate provided by C.J.A. *Cf.* Departments of Commerce, Justice, and State, the Judiciary, and Related Agencies Appropriation Act, Pub.L. No. 107–77 (2001) (authorizing funding for Fiscal Year 2002 sufficient for the Federal Judicial Conference to raise compensation of attorneys appointed pursuant to 18 U.S.C. section 3006–A from $75 per hour to $90 per hour); H. Rep. No. 107–139 (2001) (accompanying H.R. 2500, Pub.L. No. 107–77) ("The Committee is supportive of the need to raise hourly rates [provided by the Criminal Justice Act] and provides funding to increase the panel attorney rates to $90 per hour"); Report of the Proceedings of the Judicial Confer-

ence of the United States, September 19, 2000 50 (recommending a compensation rate of $113 per hour in-court and out-of-court for federal non-death penalty cases; death penalty cases have a still higher rate).

The preliminary injunction does not address compensation levels for necessary experts or investigators. Nor does it address the fees that are paid to the law guardians who represent subclass B plaintiffs in Family Court proceedings. Subclass B plaintiffs are usually represented by Legal Aid Society attorneys. There has been no evidence that their representation is inadequate.

This preliminary injunction does not address the question of what fees are necessary to protect the constitutional rights of alleged batterers in Article 10 proceedings. Despite invitations by the court for representatives of a class of alleged batterers to come forward, none have done so.

The need for as much precision as is practicable requires a degree of exactitude in stating the obligations of the defendants as a predicate for any possible contempt proceeding. Some words, such as "services"—which includes such matters as the provision of psychological treatment or safe accommodations for mothers and children—are not defined because they are well accepted terms of art for workers in the field. Definitions in the preliminary injunction track the present statutory definitions as closely as practicable.

The preliminary injunction can be summed up in plain language: the government may not penalize a mother, not otherwise unfit, who is battered by her partner, by separating her from her children; nor may children be separated from the mother, in effect visiting upon them the sins of their mother's batterer.

All requests for preliminary injunctive relief by the plaintiffs not specifically addressed in the following preliminary injunction are denied.

It is ordered:

1. For the purposes of this preliminary injunction, the following definitions shall apply:

A) "Abuse" means any conduct that:

  (i) inflicts or allows to be inflicted upon an individual physical injury by other than accidental means which causes or creates a substantial risk of death, or serious or protracted disfigurement, or protracted impairment of physical or emotional health or protracted loss or impairment of the function of any bodily organ, or

  (ii) creates or allows to be created a substantial risk of physical injury to an individual by other than accidental means which would be likely to cause a substantial risk of death, or serious or protracted disfigurement, or protracted impairment of physical or emotional health or protracted loss or impairment of the function of any bodily organ, or

  (iii) would constitute commitment of, or allowance of commitment of, a sex offense as defined in the New York Penal Law, or

  (iv) would constitute any other violation of the New York Penal Law endangering an individual or creating substantial risk of endangering an individual, including, but not limited to acts constituting disorderly conduct, harassment, menacing, reckless endangerment, kidnaping, assault, attempted assault, or attempted murder.

B) "Batterer" means any of the following persons who commits or threatens to commit an act of abuse against a mother:

(i) a parent of, or person legally responsible for the care of, the mother's child;

(ii) a person legally married to the mother;

(iii) a person formerly married to the mother; or

(iv) an unrelated person who continually or at regular intervals lives in the same household as the mother, or who has in the past continually or at regular intervals lived in the same household as the mother.

C) "Child" means any individual under eighteen years of age living with a person who has custody of the child, legally or de facto.

D) "Domestic Violence" means abuse of a mother by a batterer.

E) "Mother" means any individual, male or female, who has custody of a child, alone or shared, temporary or permanent, legal or de facto. The feminine noun or pronoun refers to a male when appropriate.

F) "Neglect" means any conduct that:

(i) impairs a child's physical, mental or emotional condition, or causes such condition to be in imminent danger of becoming impaired, as a result of the failure of a parent or other person legally or de facto responsible for the child's care to exercise a minimum degree of care

(a) in supplying the child with adequate food, clothing, shelter, or education in accordance with the provisions of part one of Article sixty-five of the education law, or medical, dental, optometrical or surgical care, though financially able to do so or when offered financial or other reasonable means to do so; or

(b) in providing the child with proper supervision or guardianship, by unreasonably inflicting or allowing to be inflicted harm, or a substantial risk of harm, including the infliction of excessive corporal punishment; or by misusing a drug or drugs; or by misusing alcoholic beverages to the extent that she loses control of her actions; or by any other acts of a similarly serious nature requiring the aid of the court; provided, however, that where the mother is voluntarily and regularly participating in a rehabilitative program, evidence that she has repeatedly misused a drug or drugs or alcoholic beverages to the extent that she loses self-control of her actions shall not establish that the child is neglected by her in the absence of evidence establishing that the child's physical, mental or emotional condition has been impaired or is in imminent danger of being impaired as set forth in this subparagraph (i); or

(ii) constitutes abandonment, according to the definition and other criteria set forth in section 384(b) of the New York Social Services Law by a parent or other person legally or de facto responsible for the care of the child.

G) "Victim of Domestic Violence" means any mother who has been abused by a batterer, and who has not herself committed acts of abuse against her batterer except in self-defense.

2. When the Administration for Children's Services (ACS) notifies the New York State Central Register of Child

Abuse and Maltreatment of the results of an investigation pursuant to section 422 of the New York Social Services Law, ACS shall declare the report unfounded as to the mother where the sole basis of the report against the mother is that the mother (i) has been a victim of domestic violence, or (ii) has "engaged" in domestic violence where the sole basis for the allegation is that the mother has been the victim of domestic violence, or (iii) has failed to cooperate with "services," where the sole reason for offering services is that the mother has been a victim of domestic violence unless ACS has alleged with specificity how the child has been harmed or is at risk of harm as a result of the mother's failure to accept services.

3. Unless ACS has obtained the written consent of the mother, ACS shall not remove a child from the custody of the mother without a court order solely because the mother is the victim of domestic violence except in cases where the child is in such imminent danger to life or health that he or she must be removed and there is not reasonably sufficient time to obtain a court order. When such emergency conditions exist and ACS removes a child before obtaining a court order, ACS shall file an Article 10 petition in Family Court no later than the next day the Family Court is open. ACS shall make diligent efforts to secure the appearance of the mother in court, and the children in the office of the law guardian, on the day the petition is filed.

4. When the batterer abuses or threatens to abuse a child in connection with domestic violence against the mother, and the mother is a victim of domestic violence and has not herself abused or neglected the child, ACS shall make reasonable efforts to separate the batterer from the mother and child and to provide reasonably adequate protection from the batterer by helping the mother and child to obtain safe shelter together, or a protective order against the batterer, or prosecution of the batterer, or otherwise, to the end that the mother and the child not be separated if that is at all reasonably possible.

5. a) ACS shall inform the mother of her rights and those of her child and shall inform any child ten years of age or older of his or her rights before taking any action to separate mother and child on the basis that the mother is a victim of domestic violence, or, if ACS is unable to contact the mother before effecting the removal, as soon after the removal as practicable.

   b) ACS shall prepare a pamphlet written in simple language explaining a mother's rights and those of her child. ACS shall make this pamphlet available at least in the languages of English and Spanish, and shall give a copy to the mother and to a child ten years of age or older before taking any action to separate mother and child on the basis that the mother is a victim of domestic violence. If ACS is unable to contact the mother before effecting the removal, it shall furnish her with the pamphlet as soon after the removal as practicable.

6. ACS shall in any petition it files under Article Ten of the New York Family Court Act, refrain from alleging against the mother as a grounds for a finding of abuse or neglect that the mother (i) has been a victim of domestic violence, or (ii) has "engaged" in domestic violence where the sole basis for the allegation is that the mother has been the victim of domestic vio-

lence, or (iii) has failed to cooperate with "services," where the sole reason for offering services is that the mother has been a victim of domestic violence unless ACS alleges with specificity how the child has been harmed or is at risk of harm as a result of the mother's failure to accept services. ACS shall draft petitions alleging domestic violence so that allegations provide a particular and specific description of any domestic violence perpetrated by the respondents and of the neglect or abuse suffered by the child as a result of that domestic violence.

7. Except as otherwise provided by an order of a court, where the mother is a victim of domestic violence and has not otherwise abused or neglected the child, and where mother and child are separated by ACS because no other practicable alternative is available to protect the child from the batterer, ACS shall return physical custody to the mother as soon as a non-removal alternative that adequately protects the child can be made available.

8. Where ACS separates a mother and child, and where the mother is a victim of domestic violence and has not otherwise abused or neglected the child, a child safety conference shall be held by ACS within seventy-two hours of the removal. The mother, as well as other members of the mother's and child's family and community (when requested by the mother, the child, or ACS) shall be permitted to meet with ACS staff and service providers to discuss appropriate action for securing the safety of the child. During this conference and during any other conferences, both mother and a child ten years of age or older shall have the right to consult with counsel. ACS shall inform mother and a child ten years of age and older of this right at the outset of the conference. ACS shall not encourage, request, or demand that any legally binding document be signed or orally agreed to during such conferences without informing the mother and a child ten years of age or older of the right to consult counsel.

9. ACS shall review any pending petition filed under Article Ten of the New York Family Court Act against any victim of domestic violence, which has not yet resulted in an order of disposition by the Family Court, that includes as its sole allegation against the mother that the mother (i) has been a victim of domestic violence, or (ii) has "engaged" in domestic violence where the sole basis for the allegation is that the mother has been the victim of domestic violence, or (iii) has failed to cooperate with "services," where the sole reason for offering services is that the mother has been a victim of domestic violence unless ACS has alleged with specificity how the child has been harmed or is at risk of harm as a result of the mother's failure to accept services. After conducting this review, ACS should determine whether the petition should be

a) withdrawn as to both respondents (if neither respondent is neglecting or abusing the child);

b) withdrawn as to only the victim of domestic violence (if only the batterer is neglecting or abusing the child); or

c) redrafted to include a particular and specific description of any abuse or neglect perpetrated by either or both respondents (if either or both respondents have allegedly neglected or abused the child).

Where ACS determines that the petition should be withdrawn as to the mother, it shall take appropriate steps to obtain court approval and to obtain the return to the mother of any child removed on the basis of the petition.

10. When a court orders ACS to return a child to a mother, ACS shall take appropriate action to obtain the immediate return of the child to the mother. Immediate return shall mean no later than 5:00 P.M. on the next business day following the issuance of the order, unless a court stays the order for a longer period of time or otherwise conditions the return.

11. ACS shall promptly implement a training and supervision program orally and by written materials that will inform all employees, consultants, contractors and ACS attorneys involved with child removal of the requirements imposed by this preliminary injunction, prepare them to implement these requirements, and ensure that these requirements are followed in practice.

12. ACS shall include at least one domestic violence specialist in each clinical consultant team it establishes.

13. Subject to order of a court, a mother who is prosecuted in the Family Court by ACS seeking removal of a child, or approval for action in removal of a child without court order, shall be afforded the right to counsel. Subject to order of a court, if she cannot afford counsel, counsel shall be appointed and paid an amount that permits effective representation of the mother. Subject to order of a court, and limits on expenditure per case by a court, this compensation shall be $90 an hour for both in-court and out-of-court time. For any single case, compensation shall not exceed $1,500, subject to order of a court. Representation shall include advice to the mother on any administrative proceedings conducted by ACS related to court proceedings, including conferences with ACS or other personnel. This preliminary injunction does not mandate that appointed counsel must be permitted to be present at conferences between or among social workers or other officials and the mother, child, or batterer, only that the mother and child shall not be prevented from consultation with counsel during such conferences.

14. A five person Review Committee ("Committee") shall be formed to assist in the enforcement of, and compliance with, this preliminary injunction. The Committee shall be composed of one representative selected by counsel for the members of subclass A, one representative selected by counsel for the members of subclass B, one representative selected by counsel for the State of New York, one representative selected by counsel for the City of New York, and a chairperson. Each party shall select its representative and inform the court of the selection within seven days of this provision becoming effective; in the event that a party fails to select a representative within seven days, the court shall appoint that representative. The chairperson shall be chosen by vote of at least three representatives within thirty days of this preliminary injunction taking effect; in the event that a chairperson is not selected within thirty days, the court shall appoint the chairperson. All Committee members shall serve until further order of this court. A Committee member may

resign with the permission of the court, in which case the party that originally could have appointed the member shall have seven days to select a new representative. If the chairperson resigns, the Committee shall have seven days to select a new chairperson. In the event that the replacement is not so selected, the court shall appoint the replacement.

The Committee is intended to serve as a "safe harbor" that will provide ACS and others with an opportunity to recognize and respond to any complaint alleging a violation of this preliminary injunction and to avoid judicial sanction. Any complaint concerning the compliance of ACS or any other person with this preliminary injunction shall be referred in the first instance to the Committee. Any complaint filed before this court that has not been previously considered by the Committee shall be dismissed without prejudice.

When the Committee receives a complaint, it shall immediately notify ACS or the person complained of. The Committee shall review the complaint and promptly decide whether the complaint is meritorious, and, if so, after conferring with representatives of the ACS or other person complained of, how the alleged violation should be cured. The Committee shall inform complainant, plaintiffs, ACS, the State, the person complained of, and the court of its decision. If the Committee determines that the complaint is meritorious, ACS or the person complained of shall within five days of the Committee's decision inform the Committee, the complainant, plaintiffs, and the court whether it has conformed to the cure proposed by the Committee. A complainant will be free to file, and this court will hear, a petition alleging that ACS or another person has violated the preliminary injunction only after (i) an announcement by the Committee that complainant's allegations are not meritorious; or (ii) the expiration of the five-day grace period following a Committee announcement that the complaint is meritorious; or (iii) upon order of this court in exceptional circumstances.

15. This preliminary injunction, and all its provisions, shall automatically terminate on January 31, 2004, unless it is extended by court order.

16. This preliminary injunction is stayed until June 22, 2002, except as provided in paragraphs 17 or 18, *infra*, to permit defendants to appeal and to effectuate appropriate changes without the court's supervision.

17. ACS shall report to the court on the first day of each month beginning February 1, 2002, on progress to date; any person may supplement the report. Copies of ACS's reports shall be furnished to counsel for subclass A and subclass B, any amici and the State. In addition, ACS shall provide to counsel for subclass A and subclass B and the State any new or amended policies, procedures, protocols, guidelines, directives, memoranda, training materials, or other documents relating to the issues in this action within three days of their issuance.

18. Any party may request the court to modify any provision that proves unworkable or inequitable. Any party may apply for a lifting or modification of the stay or for other relief. The court retains foot-of-the-decree jurisdiction.

SO ORDERED