*425 OPINION OF THE COURT
Lucindo Suarez, J.
Equity and the administration of justice are at the core of this litigation. Herein lay two competing jurisprudential doctrines: the promise of Gideon[1] pitted against the organic law that each branch of government should be free from interference by either of the other.
The issue in this motion for a preliminary injunction and declaratory judgment is whether New York State’s failure to increase the current compensation rates for assigned counsel has rendered hollow the constitutional and statutory right to counsel and obstructs the judiciary’s ability to function.
This court finds serious and imminent danger of ineffective assistance of counsel to indigent litigants in the New York City Family and Criminal Courts resulting from the inadequate compensation rates paid to assigned counsel; holds in abeyance a declaration, if at all, that the assigned counsel statutory scheme is unconstitutional as applied; and issues a mandatory preliminary injunction directing payment of an interim rate of $90 an hour for in- and out-of-court work.
The New York County Lawyers’ Association (NYCLA) seeks declarations, pursuant to CPLR 3001 that: (1) the State of New York is obligated to ensure that a sufficient number of qualified private attorneys are available and able to represent children and indigent adults in family and criminal proceedings in New York City; (2) the State’s failure to raise the hourly rates of compensation paid to assigned counsel,[2] the distinction between the rates paid for in- and out-of-court work, and the ceilings on total per case compensation have created a severe and unacceptably high risk that children and indigent adults will not receive meaningful and effective legal representation in violation of the New York and United States Constitutions; and (3) the rate setting provisions of section 722-b of the County Law, section 245 of the Family Court Act, and section 35 of the Judiciary Law are unconstitutional as currently ap *426 plied to the representation of children and indigent adults in New York City.[3]
In addition to declaratory relief, NYCLA seeks a mandatory preliminary injunction, pursuant to CPLR 6301, directing that: (1) the rate of compensation for assigned counsel in all family and criminal trial and appellate proceedings in New York City shall be $100 per hour to ensure that a sufficient number of qualified private attorneys are available and able to provide children and indigent adults with meaningful and effective legal representation in these proceedings; (2) there shall be no distinction between the hourly rates paid for in- and out-of-court work; (3) there shall be no ceilings on total per case compensation; and (4) the $100 per hour rate shall be effective immediately and remain in effect until such time as the State may modify the assigned counsel system, consistent with its constitutional obligations.
Finally, NYCLA seeks further injunctive relief to take effect two months after the above orders have been issued requiring the State to: (1) ensure that sufficient numbers of assigned counsel are available each day to staff the intake parts in the New York City Family Court; (2) review the total number of hours billed by assigned counsel every three months and to prevent any attorneys who have billed 2,000 hours or more *427 work during the prior 12 months from accepting any new assigned cases until their billed hours fall below this limit; and (3) enforce all existing standards, guidelines and rules of the Assigned Counsel Plan and Law Guardian Programs pertaining to the conduct and performance of assigned counsel. These additional measures, NYCLA submits, are necessary to ensure that all children and indigent adults who are entitled to counsel are assigned attorneys able to provide them with meaningful and effective legal representation.
The State argues that the City of New York has a substantial interest in the subject matter of the preliminary injunction, especially in light of NYCLA’s reference to contempt sanctions should the City fail to comply with any order this court may issue, and therefore this court should not consider the issues implicated by NYCLA’s request for preliminary relief without affording the City an opportunity to be heard. On January 23, 2002, this court issued an interim decision and order directing NYCLA to file and serve the City of New York with a supplemental summons and complaint. The City of New York interposed its answer and cross-moved to dismiss, pursuant to CPLR 3211, contending NYCLA did not set forth a cause of action against it. That motion is denied to the extent that the City of New York remains a necessary party.
CPLR 1001 (a) mandates joinder of a party in two situations: (1) where that party is necessary if complete relief is to be accorded between the persons who are parties to the action, or (2) where the unnamed party might be inequitably affected by a judgment in the action. (See, Matter of Castaways Motel v Schuyler, 24 NY2d 120, 125 [1969] [nonparties are “indispensable” where the determination of the court will adversely affect their rights].) “As to the latter requirement, ‘[t]he possibility that a judgment rendered without [the omitted party] could have an adverse practical effect [on that party] is enough to indicate joinder.’ ” (Hitchcock v Boyack, 256 AD2d 842, 844 [3d Dept 1998].) Indeed, “the primary reason for compulsory joinder of parties is to avoid a multiplicity of actions and to protect the nonparties whose rights should not be jeopardized if they have a material interest in the subject matter.” (Joanne S. v Carey, 115 AD2d 4, 7 [1st Dept 1986].)
New York State bears the ultimate responsibility to provide counsel to the indigent. (Gideon, supra, 372 US at 344.) However, the City of New York is an indispensable party in the context of this preliminary injunction, as the New York State Legislature has passed on the responsibility of creating *428 an assigned counsel plan to the individual counties (see County Law § 722),[4] and the expense of funding it to its political subdivisions. The Office of Court Administration funds the Law Guardian Program and the Mental Hygiene Legal Service Office. The executive branch covers the cost of representing indigent defendants in capital cases. Local governments and the Office of Court Administration contract with organizations to provide representative services pursuant to the procurement rules that govern them, i.e., the Legal Aid Society. The Legislature sets a statewide rate for private panel lawyers who represent indigent children and adults. The statutory cap provisions and compensation rates contained in Judiciary Law § 35, Family Court Act § 245 (b),[5] and County Law § 722-b are mandated by the Legislature. It sets the rates, whereas the localities administer and fund the program. The cases cited by City of New York for dismissal, Jiggetts v Grinker (148 AD2d 1 [1st Dept 1989], revd on other grounds 75 NY2d 411 [1990]) and Minino v Perales (168 AD2d 289 [1st Dept 1990]), are inapposite as New York State not only set the rate therein, but also shouldered the financial obligation. If complete relief is to be accorded among the parties to this action, the City of New York must remain a defendant as it has a substantial financial interest in the outcome and “might be inequitably affected by a judgment * * * ” (CPLR 1001 [a]; see, e.g., Matter of St. Luke’s-Roosevelt Hosp. Ctr., 89 NY2d 889 [1996] [court cannot impose cost of guardian ad litem on City of New York]) as it relates to the City’s obligation under the County Law.
While ordinarily the function of a preliminary injunction is to preserve the status quo until a final determination upon the merits can be made, “[t]here is no question that in a proper case Supreme Court has power as a court of equity to grant a temporary injunction which mandates specific conduct * * * ” (McCain v Koch, 70 NY2d 109, 116 [1987]; see also, State of New York v Solil Mgt. Corp., 128 Misc 2d 767 [Sup Ct, NY County 1985] [an injunction may be used to either restrain or compel performance of an act]). The decision whether to grant a motion for preliminary relief is committed to the sound discretion of the trial court. (See, Doe v Axelrod, 73 NY2d 748, *429 750 [1988]; Jiggetts v Perales, 202 AD2d 341, 342 [1st Dept 1994].) The test is whether a movant has shown: “(1) a likelihood of ultimate success on the merits; (2) the prospect of irreparable injury if the provisional relief is withheld; and (3) a balance of the equities tipping in the moving party’s favor.” (Doe v Axelrod, supra, 73 NY2d at 750; Housing Works v City of New York, 255 AD2d 209, 213 [1st Dept 1998].) Proof establishing these elements must be by affidavit and other competent proof, with evidentiary detail. (Scotto v Mei, 219 AD2d 181, 182 [1st Dept 1996]; Faberge Intl. v Di Pino, 109 AD2d 235, 240 [1st Dept 1985].) In addition, where, as here, the injunctive relief would upset the status quo and grant some form of the ultimate relief requested, the movant has the heightened burden of showing that extraordinary circumstances warrant the relief. (See, Rosa Hair Stylists v Jaber Food Corp., 218 AD2d 793, 794 [2d Dept 1995].)
As a threshold matter, the State contends because NYCLA does not intend to prove that any particular Family Court disposition or criminal conviction has been entered into in violation of an individual’s state or federal constitutional rights, its application for a mandatory preliminary injunction must be denied since there can be no Sixth Amendment violation in the absence of a conviction or adverse determination pursuant to the standard set forth in Strickland v Washington (466 US 668 [1984]), and therefore NYCLA is unlikely to succeed on the merits. Furthermore, according to the State, NYCLA’s reliance on Luckey v Harris (860 F2d 1012 [11th Cir 1988] [Luckey I]) is misplaced since it misapplies controlling Supreme Court precedent and was ultimately dismissed on abstention grounds. (See, Luckey v Miller, 976 F2d 673, 676-679 [11th Cir 1989].) The linchpin oí Luckey I can be found in two sentences: “[t]he sixth amendment protects rights that do not affect the outcome of a trial. Thus, deficiencies that do not meet the ‘ineffectiveness’ standard may nonetheless violate a defendant’s right under the sixth amendment.” (Id. at 1017.)
Ordinarily, federal claims of ineffective assistance are judged case by case, after conviction, and measured against the Strickland standard. Strickland requires defendants to show that: (1) the attorney’s performance fell below an objective standard of reasonableness, and (2) that there is a reasonable probability that but for counsel’s unprofessional errors, the result of the proceeding would have been different. (Kieser v People of State of N.Y., 56 F3d 16, 18 [2d Cir 1995], quoting Strickland, 466 US at 694.) Prejudice is presumed in cases where a defen *430 dant was represented by one not licensed to practice law (Bellamy v Cogdell, 974 F2d 302, 306 [2d Cir 1992] [en banc]; People v Felder, 47 NY2d 287 [1979]); the attorney is implicated in defendant’s crime (United States v O’Neil, 118 F3d 65, 71 [2d Cir 1997]); the attorney slept during a substantial portion of the trial (Tippins v Walker, 77 F3d 682 [2d Cir 1996]); upon a showing of an actual conflict of interest (United States v Schwarz, 283 F3d 76 [2d Cir 2002]); and in the case of a civil action seeking prospective injunctive relief premised on evidence of likely constitutional violations. (Luckey v Harris, 860 F2d 1012 [11th Cir 1988]; Zarabia v Bradshaw, 185 Ariz 1, 912 P2d 5 [1996] [en banc] [protect the rights of indigent criminal defendants by ordering new compensation rates]; State v Peart, 621 So 2d 780 [La 1993]; State v Quitman County, 807 So 2d 401 [Miss 2001]; see also, Note, Rodger Citron, [Un]Luckey v. Miller: The Case for a Structural Injunction to Improve Indigent Defense Services, 101 Yale LJ 481 [Nov. 1991].)
In New York, to prevail on a claim of ineffective assistance, defendants must demonstrate the “absence of strategic or other legitimate explanations for counsel’s alleged shortcomings” (People v Gil, 285 AD2d 7, 12 [1st Dept 2001]); and that they were deprived of a fair trial by less than meaningful representation. (People v Flores, 84 NY2d 184, 187 [1994]; People v Ford, 86 NY2d 397, 405 [1995].) In the absence of such a demonstration, New York courts will presume that defense counsel acted in a competent manner. (People v Rivera, 71 NY2d 705, 709 [1988].) The presumption of effective assistance attaches on conviction, and is justified based on New York law imposing specific obligations on defense attorneys. (People v Bennett, 29 NY2d 462, 466 [1972]; People v Droz, 39 NY2d 457, 462 [1976]; see also, Code of Professional Responsibility DR 7-101 [22 NYCRR 1200.32] [the duty to investigate both the law and the facts of each case].)
Prejudice, as an aspect of the Strickland test, is examined more generally under the State Constitution in the context of whether defendant received meaningful representation. (See, People v Hobot, 84 NY2d 1021, 1022 [1995] [the test is whether counsel’s errors seriously compromise a defendant’s right to a fair trial].) While the inquiry focuses on the quality of the representation provided to the accused, the claim of ineffectiveness is ultimately concerned with the fairness of the process as a whole rather than its particular impact on the outcome of the case. The purpose is to ensure that a defendant has the assis *431 tance necessary to justify society’s reliance on the outcome of the proceedings. Notably, New York is concerned as much with the integrity of the judicial process as with the issue of guilt or innocence (see, e.g., People v Donovan, 13 NY2d 148, 154 [1963]), and therefore this court finds the more taxing two-prong Strickland standard used to vacate criminal convictions inappropriate in a civil action that seeks prospective relief premised on evidence that the statutory monetary cap provisions and compensation rates currently subject children and indigent adults to a severe and unacceptable risk of ineffective assistance of counsel. This court further finds Strickland’s reliance on postconviction review provides no guarantee that the indigent will receive adequate assistance of counsel under the New York Constitution in the context of this action. Accordingly, because the right to effective assistance of counsel in New York is much more than just the right to an outcome, threatened injury is enough to satisfy the prejudice element and obtain prospective injunctive relief to prevent further harm.
Instructive on the issue of injury necessary to justify prospective relief is the Court of Appeals decision in Swinton v Safir (93 NY2d 758 [1999]), where a probationary New York City police officer was discharged based on an ex-girlfriend’s allegation of assault and attempted rape which were later recanted. The officer brought a CPLR article 78 proceeding challenging his termination and sought a name clearing hearing.[6] The Court of Appeals agreed with the lower court that the probationary officer had no right to challenge his termination by way of a hearing, absent a showing (not present) that his dismissal was in bad faith or for some impermissible reason. The question for the court however was whether actual dissemination of the stigmatizing material to prospective employers was necessary to trigger the right to a name clearing hearing, or whether proof of a likelihood of dissemination was sufficient. The police department argued that actual injury was necessary by dissemination of the stigmatizing material before the right to a name clearing hearing was triggered. Their argument was that three Federal Circuit Courts insisted *432 upon actual public disclosure: Ortega-Rosario v Alvarado-Ortiz (917 F2d 71, 74-75 [1st Cir 1990]), Copeland v Philadelphia Police Dept. (840 F2d 1139, 1148 [3d Cir 1988]), and Olivieri v Rodriguez (122 F3d 406, 408 [7th Cir 1997]). Unconvinced by the policy arguments expressed, the Court of Appeals rejected conflicting federal precedent, reinstated the complaint and concluded “proof of a likelihood of the occurrence of a threatened deprivation of constitutional rights is sufficient to justify prospective or preventive remedies under 42 USC § 1983, without awaiting actual injury.” (Id., 93 NY2d at 765-766, citing Luckey v Harris, 860 F2d 1012, 1017 [11th Cir 1988]; see also, Benjamin v Fraser, 264 F3d 175 [2d Cir 2001] [pretrial detainees were not required to show actual injury in challenging prison regulations which allegedly adversely affected their Sixth Amendment right to counsel by impeding attorney visitation].)
The State contends Swinton is not analogous to the prospective injunctive relief sought by NYCLA because its claims are on behalf of unnamed and unidentified individuals who have not articulated any conduct by defendants that has violated, or is likely to violate, their rights, and that Swinton supports their view that to obtain injunctive relief, NYCLA must demonstrate an actual constitutional violation which is about to occur. NYCLA counters that proof of a likelihood of the occurrence of a threatened deprivation of the constitutional right, i.e., effective assistance of counsel and in some cases the delay in appointing counsel, is sufficient to justify prospective or preventive remedies without awaiting actual injury. Granting prospective relief to secure constitutional standards in state proceedings based on evidence of the likelihood of depriving fundamental and statutory rights has long been within the province of the courts. (See, e.g., Pugh v Rainwater, 483 F2d 778 [5th Cir 1973], revd in part on other grounds sub nom. Gerstein v Pugh, 420 US 103 [1975].) Evidence that minors and indigent adults will likely receive ineffective assistance of counsel in the Family and Criminal Courts in New York City is sufficient to warrant judicial intervention in the form of a preliminary injunction.
The State acknowledges its duty to provide effective counsel to indigent litigants in the Family and Criminal Courts, but argues that the expenditure of funds for the purpose of indigent defense or the manner by which it is provided is a complex societal and governmental issue best left to the legislative and executive branches, which are better suited to the task. This *433 court agrees with the proposition that the entirety of NYCLA’s requested relief can only be had through the legislative process. However, this court finds NYCLA has satisfied its burden of showing a likelihood that indigent litigants in the New York City Family and Criminal Courts are being denied effective assistance of counsel, as a result of the current compensation rates.
Accordingly, this court issues a mandatory preliminary injunction directing the payment of an interim rate of $90 an hour for in- and out-of-court work. However, this court denies injunctive relief to require the State to review the total number of hours billed by assigned counsel every three months and to prevent any attorneys who have billed 2,000 or more hours to work during the prior 12 months from accepting any new assigned cases until their billed hours fall below this limit; and to require the State to enforce all existing standards, guidelines and rules of the Assigned Counsel Plan and Law Guardian Programs pertaining to the conduct and performance of assigned counsel. The judiciary may not usurp the legislative function by judicial amendment of the statute. (See, McKinney’s Cons Laws of NY, Book 1, Statutes § 368.)
NYCLA must also show irreparable injury will result unless the specific preliminary relief requested is granted. The injury must be material and actual for which monetary compensation is inadequate. (See, People v Canal Bd., 55 NY 390, 397 [1874]; Haulage Enters. Corp. v Hempstead Resources Recovery Corp., 74 AD2d 863 [2d Dept 1980].) NYCLA has provided uncontroverted evidence of material and actual injury: in neglect proceedings children and parents suffer when they are unnecessarily separated due to the unavailability of assigned counsel; in juvenile delinquency proceedings children suffer by continued detention in the absence of counsel; in the criminal context, defendants endure protracted pretrial detention, particularly in homicides and “serious” felony cases. This court is not unaware of the continued increase in the Criminal and Family Court case load, and the continued decrease of panel attorneys resulting in inordinate case loads for those who remain.
NYCLA has satisfied its heightened burden of showing extraordinary circumstances to warrant preliminary injunctive relief in this case which has pitted the three branches of government against each other.
A fundamental precept of the separation of powers doctrine is that each branch of government be free from interference by either of the others in discharge of its peculiar duties. Of equal *434 import is the fact that one branch of government may not encroach on or impede the other in carrying out its duties and responsibilities. (People ex rel. Burby v Howland, 155 NY 270 [1898]; People v Granatelli, 108 Misc 2d 1009 [Sup Ct, NY County 1981].) Pursuant to our tripartite system of government, the power to adopt laws is solely within the prerogative of the Legislature. (NY Const, art III, § 1.) In passing on the constitutionality of a statute, a presumption exists that the Legislature has investigated and found the existence of a situation which indicates the particular legislation is needed. (Maresca v Cuomo, 64 NY2d 242 [1984]; Schulz v State of New York, 84 NY2d 231 [1994] [acts of the Legislature enjoy strong presumption of constitutionality].) Generally, in order to declare a statute or a provision thereof unconstitutional, the invalidity of the law must be demonstrated beyond a reasonable doubt. (Hope v Perales, 83 NY2d 563, 575 [1994]; City of New York v State of New York, 76 NY2d 479 [1990].) When construing a statute the court may take into account the public interest advanced by the legislation. (Matter of Meyers Bros. Parking Sys. v Sherman, 87 AD2d 562 [1st Dept 1982], affd 57 NY2d 653 [1982].)
New York State adopted article 18-B in 1965 in response to the decisions of the New York Court of Appeals in People v Witenski (15 NY2d 392 [1965]) and the United States Supreme Court in Gideon v Wainwright (supra). Then Attorney General Louis Lefkowitz and the New York State Department of Law drafted the statute based upon the Federal Criminal Justice Act of 1964 (18 USC § 3006A et seq.)[7] and the Legislature enacted the statute without hearings or reports. (See, People v Johnson, NYLJ, Mar. 18, 2001, at 19, col 2 [Sup Ct, NY County, Kahn, J.].) The legislative history makes clear that the compensation rates were intended to provide attorneys with a reasonable basis upon which assigned lawyers could carry out their profession’s responsibility to accept court appointments, without either personal profiteering or undue financial sacrifice. (See, People v Brisman, 173 Misc 2d 573, 582 n 4 [Sup Ct, Bronx County 1996].)[8] Participating attorneys currently receive $25 and $40 per hour for out-of-court and for *435 in-court work, respectively, with an $800 monetary cap for misdemeanor and Family Court cases and $1,200 for felony and appellate matters. Compensation in excess of these rates may be obtained from the trial court on a case-by-case basis under “extraordinary circumstances,” subject to administrative review. (See, 22 NYCRR 127.2 [b].)[9] These rates have been in effect since 1986 — 16 years, and are currently equivalent to $1.95 and $16.95 an hour before taxes for out-of-court and in-court work, respectively, for a sole practitioner maintaining a New York City law practice, as presented in the affidavit of Dr. Lawrence H. Stiffman, a specialist in legal economics, submitted by NYCLA and uncontested by either the State or the City. One report estimates that a single attorney in a New York law office of five attorneys or less, which is the most common arrangement for assigned counsel, pays an hourly overhead of $34.75; rates in New York City are higher. (See, Chief Administrative Judge Jonathan Lippman, Assigned Counsel Compensation in New York: A Growing Crisis [2000] [hereafter A Growing Crisis].) A lawyer paid 18-B rates will lose $9.75 for every hour he works out of court and will profit only $5.75 for every hour worked in court. (A Growing Crisis at 8.) The United States Department of Labor statistical data establishes that $40 in 1986 dollars is equal to approximately $65 in 2002 dollars. (See, inflation calculator at <www.bls.gov>.) Moreover, the evidence suggests that compensating out-of-court work at a lower rate discourages preparation, and ultimately affects the quality of representation. (A Growing Crisis at 18.) Indeed, the distinction creates an economic disincentive for lawyers to perform adequate investigations and seek speedy disposition of all cases despite the particular facts. The more time spent on a case means a greater negative cash flow.
In addition, court administrators have recognized for years that New York’s assigned counsel rates undermine both the operation of the courts and the quality of the representation provided to children and indigent adults. (See, A Growing Crisis; Judith S. Kaye, The State of the Judiciary 2002, <www.courts.state.ny.us/soj2002.html> [accessed July 24, *436 2002].) New York State’s official Web site boasts it has the 10th largest economy in the world “[w]ith a Gross State Product of $593 billion” (see, <www.state.ny.us/economy.htm>), but current 18-B compensation rates “are now at a lower level than that paid by all but one other state in the nation.” (See, A Growing Crisis at 1.) There has been no indication that increasing 18-B fees has achieved priority status at the capítol, despite suggestions of imminent legislation.[10] Assigned counsel rates must be increased to levels sufficient to induce experienced and able criminal and family law practitioners once again to take on these assignments. Reference to the rates paid for assigned counsel work in the federal courts is particularly instructive in determining appropriate compensation levels. The Federal District Courts for the Southern and Eastern Districts of New York currently compensate attorneys in criminal cases at a rate of $90 per hour. (See, 18 USC § 3006A.) Based on analysis of the overhead expenses incurred by New York City practitioners, and given the comparable importance of these cases, this is both compelling and necessary to assure indigents effective counsel in New York City.
This court, as any court of competent jurisdiction, is vested under the inherent powers doctrine “with all powers reasonably required to enable it to: perform efficiently its judicial functions, to protect its dignity, independence and integrity, and to make its lawful actions effective * * * .” (Wehringer v Brannigan, 232 AD2d 206, 207 [1st Dept 1996] [internal quotation marks omitted], appeal dismissed 89 NY2d 980 [1997].) Accordingly, when legislative appropriations prove insufficient and legislative inaction obstructs the judiciary’s ability to function, the judiciary has the inherent authority to bring the deficient state statute into compliance with the Constitution by order of a mandatory preliminary injunction. (See, Commonwealth ex rel. Carroll v Tate, 442 Pa 45, 52, 274 A2d 193, 197 [1971]; Zarabia, supra; Peart, supra; Quitman County, supra.) Concomitantly, “when the Legislature creates a duty of compensation it is within the courts’ competence to ascertain whether [the State] has satisfied [that] duty * * * and, if it has not, to direct that the [State] proceed forthwith to do so” (New York County Lawyers’ Assn. v Pataki, supra at 780 [citations omitted] [internal quotation marks omitted].) Therefore, longstanding maxims rooted in the doctrine of separation of *437 powers must yield in equity on a showing that the State’s failure to raise the current compensation rates adversely affects the judiciary’s ability to function and presumptively subjects innocent indigent citizens to increased risks of adverse adjudications and convictions merely because of their poverty. (See, e.g., Matter of McCoy v Mayor of City of N.Y., 73 Misc 2d 508 [1973] [court can order New York City to pay for operation of the Civil Court, Housing Part]; accord, Carroll v Tate, supra.)
NYCLA’s uncontroverted evidence through official statistics, reports from independent groups, and affidavits and depositions from judges, court personnel, and bar leaders chronicles the adverse effects and the depth of the crisis of the current 18-B compensation rates on juvenile delinquency cases, abuse and neglect proceedings, appeal backlogs, arraignment overload, individual assigned counsel case overload, uncertified panel counsel, and prolonged delays. The report of the Appellate Division, First Department, Committee on Representation of the Poor, which after lengthy investigation, including a public hearing with many of the same witnesses herein, concluded that: “[t]he entire system by which poor people are provided legal representation is in crisis. As a result of shamefully low rates of compensation of assigned counsel, lack of resources, support and respect, inadequate funding of institutional providers, combined with ever-increasing caseloads, New York’s poor are too often not afforded the ‘meaningful and effective’ representation to which they are entitled under New York Law and the New York State Constitution.” (Mar. 23, 2001 at 1-2; see also, In re Nicholson, 181 F Supp 2d 182 [ED NY 2002].)[11]
The balancing of the equities favors NYCLA. There is sufficient evidence to preliminarily conclude that the rates should be increased. Nevertheless, this court declines, at this juncture, to issue a declaratory judgment finding unconstitutional those portions of the statute which set the compensation rates, the distinction between the hourly rates paid for in- and out-of-court work, and the ceilings on total per case compensation, without presiding over a trial.
NYCLA has satisfied its burden of showing a likelihood of ultimate success on the merits, the prospect of irreparable *438 injury if provisional relief is withheld, a balance of the equities tipping in its favor, and its heightened burden of showing that extraordinary circumstances warrant a portion of the requested relief. Therefore it is ordered that the City of New York’s cross motion to dismiss is denied; and it is further ordered that NYCLA’s motion for a preliminary injunction is granted to the extent that the City of New York is directed to pay assigned counsel the interim rate of $90 an hour for in- and out-of-court work, until modification of County Law § 722-b by the Legislature or further order of this court; and it is further ordered that the State of New York is directed to pay assigned counsel the interim rate of $90 an hour for in- and out-of-court work, as it relates to such representation in New York City, until it modifies Judiciary Law § 35.

. Gideon v Wainwright, 372 US 335 (1963); see also, Anthony Lewis, Gideon’s Trumpet (1964) (Random House NY Vintage Books ed Mar. 1989).

. As used herein, the terms “assigned counsel” or “panel attorneys” refer to private attorneys assigned to represent children and indigent adults pursuant to article 18-B of the County Law, section 245 of the Family Court Act, or section 35 of the Judiciary Law.

. NYCLA commenced this action contending that New York State’s failure to currently provide sufficient compensation to ensure court appointed private counsel for the indigent pursuant to County Law § 722-b, Family Court Act § 245 (b), and Judiciary Law § 35 (2) has resulted in systemic deficiencies in the assigned counsel system in the Supreme, Criminal and Family Courts in New York City, which has created a risk that indigent adults and children will be denied their rights to meaningful and effective assistance of counsel and due process of law, thereby violating their constitutional and statutory rights pursuant to article I, §§ 5 and 6 of the New York State Constitution and the Sixth, Eighth and Fourteenth Amendments to the United States Constitution.
Defendants moved to dismiss the complaint, arguing, inter alia, that: plaintiff lacked standing, its claims were nonjusticiable, the Governor was not a necessary party, and plaintiff failed to state a claim for tortious interference. This court ruled that NYCLA had: direct standing to sue on claims that the State’s failure to increase the statutory rates of compensation interfered with plaintiffs responsibilities to provide and maintain a list of available and adequately trained attorneys for the Family and Criminal Courts’ assigned counsel panels; third-party standing on behalf of its members’ indigent clients; and organizational standing to represent those NYCLA members who are panel members of the Assigned Counsel Plan in New York City. This court also found plaintiffs claim for declaratory relief justiciable, but dismissed all claims against the Governor, and dismissed plaintiffs claims for tortious interference. (See, New York County Lawyers’ Assn. v Pataki, 188 Misc 2d 776 [2001].) The decision is currently on appeal.

. County Law article 18-B (L 1965, ch 878).

. Family Court Act § 245 sets forth the compensation schedule for attorneys assigned to represent the indigent by reference to Judiciary Law § 35. (See, Family Ct Act § 245 [c].) New York State, by statute, required the right to counsel before the United States Supreme Court extended the constitutional right to counsel to children involved in delinquency proceedings. (See, In re Gault, 387 US 1 [1967].)

. In the context of public employment implicating a due process liberty interest, a name clearing hearing affords a public employee an opportunity to prove the stigmatizing material in the personnel file is false. (Codd v Velger, 429 US 624, 627-628 [1977].) The appropriate remedy is expungement, not reinstatement. (Board of Regents of State Colls. v Roth, 408 US 564, 573 n 12 [1972].)

. CJA attorneys recently received a raise to $90 an hour. (See, Pub L 107-77, amdg 18 USC § 3006A; see also, Wise, Federal Counsel Get Rate Hike, NYLJ, Apr. 3, 2002, at 1, col 4.)

. Noting that a review of the Governor’s Bill Jacket for the 1978 increase to the fees provided assigned counsel reveals that “many of those who commented on that bill viewed payment of reasonable compensation * * * as necessary to attract competent attorneys to join the 18-B panels and to fácil *435 itate the critical social goal of providing quality legal representation to indigent defendants.” (Id.)

. Rules of the Chief Administrator (22 NYCRR) § 127.2 (b), as amended effective April 16, 2001, provides that vouchers for services rendered by counsel appointed pursuant to the Assigned Counsel Plan (County Law § 722-b) which exceed the current statutory limit may be reviewed by the appropriate administrative judge.

. Former chairperson of the Governor’s Task Force Katherine N. Lapp sought, inter alia, dismissal premised on imminent legislation. (See, affidavit of Katherine N. Lapp, sworn to July 27, 2001.)

. In re Nicholson (supra) concerned New York City’s Administration for Children’s Services board policy of removing children of battered women and the nature and quality of the assigned counsel program that represents victims of domestic violence. The court granted the motion for preliminary injunction and set compensation for panel attorneys assigned to represent the class at $90 an hour. Judge Weinstein’s decision only affects approximately 4% of the cases brought in the New York City Family Court.